**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**August 30, 2012**

# In the Court of Appeals of Georgia

A12A1374. BRITTINGHAM v. DATTILIO.

MIKELL, Presiding Judge.

Cortney Brittingham brings this pro se appeal from the trial court's order changing her son's surname to that of the child's father, Terry Dattilio. Brittingham argues that Dattilio's petition to change the child's name was not verified, that she received insufficient notice of the petition and did not consent to the change, and that Dattilio did not comply with applicable publication requirements. We find no error and affirm.

A trial court "has broad discretion . . . to change the name of a child, and the court's decision will not be reversed unless it clearly abuses its discretion by ignoring the best interests of the child."[1]

---

[1] (Citation, punctuation and footnote omitted.) *Carden v. Warren*, 269 Ga. App. 275, 277 (2) (a) (603 SE2d 769) (2004).

So viewed, the record shows that in December 2009, having moved to Georgia the previous year, Brittingham began proceedings in Dekalb County Superior Court to domesticate New Jersey court orders as to custody of the unmarried couple's then-2-year-old son. In July 2011, the trial court entered temporary orders modifying the New Jersey orders. In August 2011, Dattilio moved to an apartment near the home of Brittingham and the child. On September 29, 2011, the trial court set a final hearing for December 1, 2011.

In the meantime, on November 7, 2011, Dattilio filed a counterclaim to change the child's surname. At the final hearing, Dattilio testified that his son had told him that he wanted to be "just like daddy" and that he wanted "to be a Dattilio." Brittingham did not raise any procedural objections concerning the father's name change petition at the hearing. Instead, she testified that she had seen the child use Dattilio as his surname and that "it's upsetting to him to be so confused" about his last name.

Brittingham argues that the trial court erred when it ordered the name change because Dattilio has not complied with the procedural requirements of OCGA § 19-12-1. Specifically, Brittingham asserts that Dattilio did not obtain her consent, did not

verify his counterclaim, and did not serve her with a copy of that pleading, either personally or by publication.[2]

Dattilio served his counterclaim for name change by mail some weeks before the final hearing, and Brittingham has not disputed that she had actual notice of the pleading well before that event.[3] In any event, however, Brittingham neither filed her procedural objections in writing nor raised them at the final hearing; instead, she litigated the merits of the name change. Because Brittingham litigated the issue of the name change in the trial court without raising any procedural objections, she has

---

[2] See OCGA § 19-12-1 (a) (petition for name change "shall be verified by the petitioner"); (b) (requiring publication "[w]ithin seven days of the filing of the petition" in "the official legal organ of the county [in which the petition is brought] once a week for four weeks"); (c) ("If the petition seeks to change the name of a minor child, the written consent of his parent or parents if they are living and have not abandoned the child . . . shall be filed with the petition"); (d) (requiring personal service "[i]f the parent or parents reside within this state, . . . except that if the location or address of the parent is unknown, service of the petition on the parent shall be made by publication as provided in this Code section").

[3] Compare *Brown v. Waters*, 208 Ga. App. 866 (432 SE2d 817) (1993) (trial court erred in granting petition to change child's name when incarcerated father raised objections including lack of personal service and when trial court granted the petition without holding a hearing).

waived consideration of those objections on appeal.[4] It also appears that the trial court had some evidence before it, including the father's testimony and the mother's admission that the child had used the father's surname and needed finality on the subject, that adopting the father's surname would be in the best interests of the child. It follows that the trial court did not abuse its discretion when it ordered the name change.[5]

*Judgment affirmed. Miller, J., concurs, and Ray, J., concurs specially.*

---

[4] See *Carden*, supra at 278 (3); *Howington v. Howington*, 281 Ga. 242, 244 (2) (637 SE2d 389) (2006) (wife who permitted issue not raised in pleadings to be litigated at hearing had waived any objections); compare *In re Scott*, 288 Ga. App. 374, 375 (654 SE2d 221) (2007) (trial court erred in denying petition for name change without holding a hearing).

[5] See *Carden*, supra at 278 (2) (a) (trial court did not abuse its discretion when it granted a petition for name change).

A12A1374. BRITTINGHAM v. DATTILIO.

RAY, Judge, concurring specially.

While I fully concur in the majority's opinion, I write separately to address an argument raised by Dattilio in his brief and to point out a shortcoming in existing law that might be addressed by the General Assembly, namely that there may be situations in which the best interests of the child are not served by requiring the consent of both parents to a child's name change.

Brittingham pursued this appeal claiming that Dattilio was not entitled to relief because he had not complied with the statutory requirements set forth in OCGA § 19-12-1, including the requirement that Dattilio obtain Brittingham's written consent to his request to change the child's name and that he file such written consent with the counterclaim seeking the name change. As set forth in the majority's opinion, any such requirement was waived when the counterclaim proceeded to trial on its merits without any objection by Brittingham that the issue was not properly before the trial court.

As the same time, Dattilio has argued that he was not required to obtain Brittingham's written consent before filing his counterclaim, or for that matter to have complied with any of the other provisions of OCGA § 19-12-1, as his right to seek

a name change for the child arose out of OCGA § 9-7-20, et seq., which is the statutory scheme wherein a biological father seeks to legitimate a child born out of wedlock. This argument is without merit. The counterclaim was filed to the consolidated action in the Superior Court of DeKalb County. This was an action to domesticate a foreign judgment from New Jersey regarding child custody, support and visitation (Civil Action No. 09-OCGA §-1427-1) and a petition to modify child support and visitation of the same New Jersey order (Civil Action No. 10-OCGA §-3241-1). Thus, it cannot be fairly argued that Dattilio's effort to obtain a name change for the child was part of an action to legitimate the child, which is what OCGA § 19-7-22 contemplates. The legitimation already had occurred in New Jersey, with the instant action being only to register it and to modify its terms.

Had Brittingham raised her procedural objections prior to the final hearing in the trial court, she may very well have prevailed. It is that fact that should cause concern; that is, that a parent who might have a compelling reason to change the name of his or her child, and that it might be in the best interest of the child to do so, could not succeed without first obtaining the written permission of the other parent, as required pursuant to OCGA § 19-12-1(c). One can think of many instances where the non-moving parent might unreasonably withhold consent, even when the best

2

interest of the child suggests a name change should occur. One such example might be when a father has been convicted of a crime against his child and the mother then wishes to seek a name change to remove the father's name from that of the child. Under OCGA § 19-12-1(c), both parents would have to agree to the change for the trial court to have authority to make it, no matter what the best interest of the child might be in that regard.

While I obviously believe that the outcome could be unfair and potentially damaging for a child if one parent were to withhold consent unreasonably, it is for the General Assembly to consider the issue in its wisdom, balancing the competing interests at stake. The Judiciary's role is limited to enforcing the laws as enacted, so long as they are constitutional.